812 F.2d 1408
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gary Raymond STAFF, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-1176.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1987.
 
 Before LIVELY, Chief Judge; WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant Staff appeals from the decision of the district court affirming the Secretary's denial of benefits.
 
 I.
 
 2
 Appellant's application was filed on July 6, 1984. A hearing was held on appellant's application on April 9, 1985, and the Administrative Law Judge (ALJ) denied the application on April 30, 1985. The Appeals Council denied appellant's request for review of the ALJ's decision on July 17, 1985. On January 21, 1986, appellant timely filed suit in the United States District Court for the Western District of Michigan. The court affirmed the Secretary's decision and denied disability benefits. This decision is being appealed to this court.
 
 
 3
 Appellant testified at the administrative hearing that he was born on February 4, 1943. Therefore, appellant was 42 years old at the hearing and is currently 43 years old. Appellant stated that he last worked for the Packaging Corporation of America where he worked for five years until June, 1981. For the first four and one-half years, he worked in a storeroom distributing parts, cutting iron and steel, and unloading trucks. He had also operated a paper machine. Prior to working at Packaging Corporation of America, he worked in the shipping and receiving department of a boat company. Appellant also worked at a Goodyear store where he mounted truck and tractor tires.
 
 
 4
 On January 8, 1981, while at home, appellant was working underneath his automobile. The ramps that supported the appellant's car buckled and the automobile fell injuring the appellant. As a result of a lawsuit brought because of injuries suffered by the appellant, he received a total settlement of over $300,000. This settlement was structured so that appellant would receive $1,000 a month.
 
 
 5
 Appellant testified to the following ailments at the hearing. He claimed to have pain in his back, right shoulder and legs which causes problems sleeping and limits his daily activities. He stated that he needs help to perform normal household chores. Also, appellant stated that if he sits for more than 15 minutes, he must stand up because of stiffness. Because of shortness of breath appellant states he can walk no longer than one block without resting. He alleges that because of the numbness in his right hand his writing ability is limited. He also said he cannot perform a simple physically undemanding job because of his headaches and his inability to tolerate long periods of sitting.
 
 
 6
 The appellant's brother-in-law, Thomas H. Dugall, also testified at the hearing. Dugall stated that he helped appellant perform his chores because appellant was unable to perform them by himself. He stated that the appellant's general condition and demeanor had deteriorated considerably since the accident. Dugall noted that the appellant was not a complainer but by his movements and general behavior it was obvious that he was in pain.
 
 
 7
 Included among the medical evidence adduced at the hearing is a deposition of a Dr. Vickers C. Hansen dated July 8, 1983. Dr. Hansen examined the appellant six months before his accident. The doctor stated that prior to the accident appellant's health was generally good. Dr. Hansen stated that appellant had some symptoms on an intermittent basis in his right hand and thumb, and an EMG showed evidence of a carpal tunnel syndrome with some evidence of nerve compression in the wrist. Dr. Hansen examined appellant after the accident on June 19, 1981, and stated that he had a markedly displaced fracture of the clavicle. Appellant also was diagnosed to have fractured ribs and a crushing injury to the lung. The physician stated that appellant's condition improved but in September of 1981 he was experiencing considerable soreness in his upper back, right shoulder and chest.
 
 
 8
 Dr. Hansen had recommended jogging but as of November 13, 1981, appellant stated he was in too much pain to jog. Neurologically appellant was normal except for some decreased sensation in the right hand.
 
 
 9
 Dr. Hansen subsequently suggested that the appellant see the physician who originally treated him following the accident; that physician was reported to have stated he could do nothing for the appellant. Dr. Hansen then referred appellant to Dr. Eric Zimmerman, a neurosurgeon. Dr. Zimmerman determined that appellant had a chronic myofascial strain. Dr. Zimmerman stated that he had examined patients previously with a similar diagnosis. He said sometimes the patients improve over time. Instead of medication he recommended increased activity.
 
 
 10
 Dr. Hansen saw the appellant again on June 1, 1982. At this time, his neurological examination was normal. As of March 9, 1983, appellant's complaints had not changed. At this time appellant's range of motion was good. Dr. Hansen felt that appellant was disabled in that he did not have the normal activity tolerance for a person of his age. Dr. Hansen also said he was disabled because his abilities to stand, walk and lift were limited. The physician did not know when appellant would recover but did state on cross-examination during the taking of his deposition that his problems were primarily subjective. Dr. Hansen stated that appellant could not perform heavy work but could have possibly tried to perform a desk type job.
 
 
 11
 A deposition was taken from Dr. E. Shaya on July 19, 1983. Dr. Shaya testified that the only time he had seen appellant was on June 16, 1983. He agreed generally with Dr. Hansen's opinion that when the claimant had not recovered after two years, he should have been taught to live with his discomfort. He stated that appellant's headache complaints were subjective in nature. On the basis of appellant's complaints he said appellant could not do any job that required continuous concentration.
 
 
 12
 Appellant underwent a consultative examination on August 27, 1984, by Dr. Richard C. Nielsen. The physician found that there was no muscle atrophy in either upper extremity. He felt that appellant had symptoms of carpal tunnel syndrome. In addition, he determined that the findings of some discomfort in the right shoulder and some loss of range of motion were problems that would likely be chronic with no obvious treatment other than continued range of motion exercises and the passage of time.
 
 
 13
 The appellant's attorney submitted a vocational rehabilitation evaluation performed by Robert D. Ancell. Mr. Ancell stated that it was his professional opinion, based on his evaluation and the physician's reports reviewed by him, that there were no jobs that plaintiff could perform. In addition to Mr. Ancell's testimony, a vocational expert testified at the hearing. This expert having been told to assume appellant could perform sedentary work with a sit/stand option, stated there were a significant number of jobs that plaintiff could perform.
 
 
 14
 The ALJ found that the appellant had the capacity to perform sedentary work providing the work allowed a sit and stand option and some minimal freedom of movement around the workplace. Therefore, relying on the testimony of the vocational expert, and using as a guide Vocational Rule 201.28 of the medical vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found appellant not disabled in light of his age, education, residual functional capacity and the jobs within his capacity.
 
 II.
 
 15
 Our review of the Secretary's decision is limited. If there is substantial evidence to support the Secretary's findings then we must affirm the decision. Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 
 16
 The first issue which needs to be addressed by the court is whether the objective medical evidence supports a finding that the appellant can do sedentary work. Appellant argues that the Secretary produced no medical evidence on appellant's employability and therefore benefits should be granted. We disagree with appellant's argument.
 
 
 17
 Dr. Hansen, appellant's treating physician, testified that his beliefs regarding appellant's pain and resultant limitations are based solely on appellant's subjective complaints. He recommended that appellant increase his activity. Dr. Neilsen found no direct evidence of carpal tunnel syndrome and he found appellant's range of motion only slightly hampered. Only Dr. Shaya's report could be considered to state that appellant was permanently disabled from any type of work. Although Dr. Shaya stated that appellant could not even perform sedentary work, he based this opinion solely on appellant's complaints of severe headaches. Dr. Shaya indicated that these complaints could not be objectively verified.
 
 
 18
 It is apparent from reviewing the record that all the physicians agreed it was natural for the appellant to be in great discomfort following his initial injuries. But it is also clear that they were of the opinion that after a short period of time the appellant's discomfort should have subsided. This is supported by the lack of objective medical findings to support the appellant's allegations of pain. The medical evidence taken as a whole simply does not suggest that the appellant cannot perform sedentary work. It is our view that the medical evidence supplies the court with substantial evidence that the appellant although unable to do heavy work can perform sedentary work.
 
 
 19
 The next issue that must be discussed concerns credibility determinations. Appellant states that credibility determinations do not rest exclusively with the ALJ and the lower court was in error in so finding. The court also disagrees with this contention. Determinations of credibility related to subjective complaints of pain rest with the ALJ and "the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly." Kirk v. Secretary HHS, 667 F.2d 524, 538 (6th Cir.1981) (quoting Beavers v. Secretary HHS, 577 F.2d 383, 387 (6th Cir.1978)), cert. denied, 461 U.S. 957 (1983). Therefore, the ALJ was within his authority when he decided that the appellant's complaints of pain were not credible.
 
 
 20
 In addition, appellant claims that the lower court improperly ignored substantial evidence of his pain. Appellant states that the Secretary must specifically identify reasons in the record why the plaintiff's pain is found not to be credible. The current status of the law with regard to subjective complaints of pain is stated in Duncan v. Secretary HHS, 801 F.2d 847 (6th Cir.1986). Under the new standard, "there must be evidence of an underlying medical condition and there (1) must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." S.Rep. No. 466, 98th Congress, 2nd Sess. 24, reprinted in 130 Cong.Rec. 56, 221 (daily ed. May 22, 1980). See Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir.1986) (per curiam).
 
 
 21
 In the present case the ALJ found that the appellant had a chronic myofascial strain following fractures of the ribs, a fracture of the clavicle, a crushing injury to his chest, and symptoms associated with right carpal tunnel syndrome. These impairments satisfy the first prong of the test. However, the ALJ found that appellant's subjective complaints of pain were not supported by objective evidence. Therefore, the first of the two alternatives of the second prong was not satisfied. As to the second alternative, there is substantial evidence to support a finding that appellant's medical conditions are not so severe that they could presently be reasonably expected to produce disabling pain. Therefore, we believe the issue concerning disabling pain was correctly decided.
 
 
 22
 Appellant also argues that the Secretary incorrectly decided there were a significant number of sedentary jobs available. Appellant contends that the district court was required to determine the number of jobs in an area and the percentage of those jobs the appellant could perform. The appellant relies on Graves v. Secretary HHS, 473 F.2d 807 (6th Cir.1973). Appellant alleges the court in Graves granted benefits because of the 100,000 light factory jobs available in the relevant geographic area, only 750 to 1,000 constituted jobs the appellant could perform. This is not the correct reading of the Graves opinion. The court in Graves relied heavily on the fact that the vocational expert placed multiple qualifications on his testimony that 750 to 1,000 jobs were available in the area. For example, the expert made the statement that the jobs in question were definitely in the minority. In addition, he stated that with regard to the jobs the appellant was qualified for, only between one-fourth and one-third of the employers would hire him because of his severe physical handicap. Also, of the jobs appellant could perform, 75 percent were filled. In light of this qualifying testimony, this court concluded that the Secretary had not shown by substantial evidence that work for which the claimant was qualified was available in significant numbers.
 
 
 23
 In the case before the court today, the vocational expert testified that there were 12,000 jobs available in the lower peninsula of Michigan if the low stress factor was removed. These jobs consisted of packaging, machine tending and production monitoring jobs. Assuming appellant could only perform low stress jobs, the expert estimated there were 6,000 jobs available. If the appellant could not use his right hand there were still 3,000 jobs available. Also, the vocational expert cited 1,500 self-service attendant jobs which he considered to be of relatively low stress. While appellant argues that this is not what Congress had in mind when they said there must be a significant number of jobs available, he does not suggest what number is significant. It is our opinion that the numbers stated by the vocational expert were sufficient to support a finding that work for which appellant was qualified is available in significant numbers. Further, since the expert did not qualify his testimony regarding available jobs, this case does not present the same situation involved in Graves.
 
 
 24
 Appellant's final argument is that the district court failed to consider significant non-exertional impairments. The appellant alleges that his tenth grade reading level and seventh grade math skills were not taken into consideration. Also, appellant alleges that the rehabilitation consultant's testimony was not allocated the proper weight. The rehabilitation consultant was of the opinion that appellant could not perform any work.
 
 
 25
 The ALJ's findings were very comprehensive. In his finding he stated that the appellant was a younger individual with a high school education and had unskilled and semi-skilled work experience. The ALJ clearly examined the rehabilitation consultant's conclusions. In addition, the ALJ examined the conclusions of the vocational expert. The current status of the law does not require the ALJ to give absolute credence to the rehabilitation consultant. The ALJ examined all the relevant evidence and found that appellant could work at a sedentary job. We believe there is substantial evidence to support this decision. Accordingly, the judgment is AFFIRMED.