**Sue GRAVES, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH, EDUCATION, AND WELFARE,**
**Defendant-Appellee.**

**No. 71-2083.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 14, 1972.

Decided Feb. 7, 1973.

Norton J. Cohen, Miller, Klimist, Cohen, Martens & Sugerman, P. C., Detroit, Mich., on brief for plaintiff-appellant.

Robert A. Rosenberg, Asst. U. S. Atty., for defendant-appellee; Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., on brief.

Before WEICK, PECK and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

The appellant, Sue Graves, seeks reversal of the district court's judgment affirming the Social Security Administration's determination that she is not eligible for disability benefits as provided by 42 U.S.C. §§ 416, 423 (1971). The appellant is now 55 years of age, five feet four inches tall and weighs about 200 pounds. She has completed the fourth grade in school. In 1964, the appellant injured her back at her place of employment. The injury was diagnosed as a ruptured intervertebral disc and a laminectomy was performed. The appellant returned to work after a period of convalescence and continued working until May, 1966. She quit her job due to severe back pain, and has not worked since.[1] The appellant's work experience has been limited to unskilled or semi-skilled jobs. At the time of her injury, she was employed as a punch press operator. Formerly, she had been employed as a packager, sewing machine operator, and spot welder.

As we review the medical reports and the testimony taken by the hearing examiner, we are mindful that the examiner's decision must be sustained if supported by substantial evidence. *See, e. g.,* Jenkins v. Gardner, 430 F.2d 243 (6th Cir. 1970); 42 U.S.C. § 405(g) (1971). In the record there are reports from six doctors and two hospitals. Also in the record there is the testimony of two medical advisors and a vocational expert, as well as the testimony of the appellant, her husband, daughter, and a

friend. The hearing examiner found that the appellant has some orthopedic dysfunction with some psychogenic overplay. It is clear that the appellant is no longer able physically to return to her previous employment as a punch press operator due to her disabilities.[2] It is therefore incumbent on the Secretary to show that the appellant has the residual capacity to perform work that is available in significant numbers in the national economy. 42 U.S.C. § 423 (1971).

There is an apparent conflict in the testimony over the extent of the appellant's residual capacity to work.[3] Specifically the trial examiner concluded that:

a review of the entire evidentiary evidence, from a psychoneurosis point of view, does not establish that the claimant's psychoneurosis has evidenced intellectual deterioration or gross disturbance in intellectual functioning.

. . . . . .

There is no indication in the records that the claimant has difficulty with the use of her hands, but as the orthopedic medical advisor indicated, she would have difficulty with frequent stooping or bending, and it would be necessary for her to change her position occasionally. Review of all the testimony, as well as the evidence, demonstrates that the claimant could do moderate, light or sedentary activities, but with the added restriction of [no] stooping, bending, and frequently changing of position.

Based on his view of the testimony of the vocational expert, the hearing examiner concluded that the appellant had the residual capacity to perform work that was available in significant numbers in the national economy. Although we agree that the hearing examiner's con-

---

1. The record also reflects that on May 13, 1966, she received a lump sum settlement of her workman's compensation claim of $17,500 from her employer.

2. It is well established in this Circuit that the appellant has carried her burden of proof if she shows that she is unable to perform her former job due to her dis-

ability. *See* Jenkins v. Gardner, 430 F.2d 243 (6th Cir. 1970); May v. Gardner, 362 F.2d 616 (6th Cir. 1966); Massey v. Celebrezze, 345 F.2d 146 (6th Cir. 1965).

3. The hearing examiner is, of course, the judge of the credibility of the witnesses before him. *See* Moon v. Celebrezze, 340 F. 2d 926 (7th Cir. 1965).

clusions as to the degree of the appellant's physical and mental limitations are based on substantial evidence, we cannot agree that she has the capacity to engage in "substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (1971).[4]

The vocational expert was asked to assume that the appellant's allegations of pain were credible; that she had the capacity to engage in light or sedentary work, but with limitations as to stooping and bending, and that she would occasionally or frequently be required to get up from a sitting position. Also he was to assume that she had an emotional impairment of the whole person of zero to five percent. Based on these assumptions the vocational expert testified that certain positions such as bench assembly, packing, packaging, visual inspection, and some light stock work would be available. The vocational expert then described several places where such work could be found in the Detroit area. He concluded that the number of jobs for which the appellant would qualify would be about 1 to 5% of the total light factory work in the Detroit area.[5]

Although the hearing examiner did not state specifically on what testimony of the vocational expert he relied, he apparently based his conclusion on this answer. The further testimony of the vocational expert makes this reliance unfounded, and an inadequate basis for his conclusion.

First, when asked if these jobs which he described were available in substantial numbers throughout the country, the vocational expert replied:

Well, if I take your emphasis on the word "substantial" to mean, you know, that they're really out there in great numbers, the answer is obviously no. As I indicated before, wherever you go, with the possible exception of a place like New York City, these positions are always going to be in a notable minority.

Second, the vocational expert further qualified under later questioning the availability of these types of jobs. He testified that only one-fourth or one-third of the employers who have these types of jobs hire people with physical handicaps. Most employers are reluctant to hire employees that might present workman's compensation problems and therefore increase insurance rates. Additionally, he pointed out that most employers discriminate in hiring older workers. Most employers prefer to hire younger people in order to pay lower wages while getting possibly higher production. The expert also pointed out that these jobs are 75% filled on a regular basis.

---

4. 42 U.S.C. § 423(d)(2)(A) provides:
   (A) an individual (except a widow, surviving divorced wife, or widower for purposes of section 402(e) or (f) of this title) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

5. The vocational expert testified that in Detroit with a metropolitan population of about three million people, jobs for which the appellant would qualify would number between 750 and 1000. The total number of light factory jobs in the area would number from 50,000 to 100,000. The percentages in the text are based on these figures. These percentages, however, may not be representative of the availability of these jobs throughout the country, because Detroit is more heavily industrialized.

Third, the vocational expert was asked whether he included a degree of pain in the assumptions on which he based his answer. He replied:

Yes, I did include the pain. I must confess, though, that I am unable to really know what weight to assign that pain. I think that is one of the ultimate decisions that will be reached by someone other than myself. I did go on the assumption that the pain was present, but that since certain functions could be performed with or without pain present, that the pain might not necessarily preclude these jobs from being performed. A finding to the opposite might well be found, but since it was not overly emphasized, I gave it perhaps less weight.

Furthermore, he testified that if the appellant's allegations of pain are taken as true, she would be absolutely unemployable.[6]

No other evidence was produced on this precise contention. Taking into account the qualifications which the vocational expert placed upon his earlier testimony, it seems clear to us that the Secretary failed to carry his burden of showing by substantial evidence that work for which the appellant is qualified is available in significant numbers in the national economy as defined in the Act.

The judgment of the district court is reversed, and the action is remanded for the entry of judgment in appellant's favor.

---

6. The hearing examiner's findings on the degree of pain that the appellant suffers are at best equivocal. It is obvious that the hearing examiner did not feel that the appellant's pain was disabling, so as to prevent her from engaging in light factory work. The subjective allegations of pain must be taken into account if the impairment which she alleges is "demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3) (1971). *See, e. g.,* Haskins v. Finch, 307 F.Supp. 1272 (D.C.Mo. 1969). The hearing examiner did find:

As testimony brought out by the medical advisor psychiatrist, the pain threshold varies with individuals and in reality there is no objective measurement. The hearing examiner believes it would be unrealistic to accept the claimant's self-serving statements as to the degree of pain, without some corroboration in the medical records. It must be noted in this case that we are not dealing with a case of continuous intractable pain.

If this passage is to be taken to mean that the appellant's allegations of pain are not supported by the medical record, the hearing examiner is in error. All medical reports in the record tend to support the appellant's testimony as to pain.