**Johnny W. HALL, Plaintiff–Appellee,**

**v.**

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant–Appellant.**

**No. 86–3900.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1987.

Decided Jan. 20, 1988.

Roger A. Lee, John Cervay (argued), Dayton, Ohio, for plaintiff-appellee.

John F. Cordes, Thomas M. Bondy, Lead Counsel (argued), Civ. Div., Appellate Staff, U.S. Dept. of Justice, Washington, D.C., Nicholas J. Pantel, Asst. U.S. Atty., Cincinnati, Ohio, for defendant-appellant.

Before LIVELY, Chief Judge and KEITH and MILBURN, Circuit Judges.

LIVELY, Chief Judge.

This case requires us to determine the proper meaning of "work which exists in significant numbers" as used in the definition of "disability" found in the Social Security Act, 42 U.S.C. §§ 301 et seq. (1982) (the Act).

### I.

Disability is defined generally as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1983). This definition is refined in the next succeeding paragraph:

> [A]n individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ... "[W]ork which exists in the national economy" means work which exists in

significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In this case a vocational expert testified that the plaintiff could perform the work required in several unskilled sedentary jobs. He listed four such jobs and testified that there were between 1350 and 1800 such jobs in a nine-county area including Dayton, Ohio, where the plaintiff lived. The witness also testified that there was a total of approximately 540,000 jobs in the same area.

The administrative law judge (ALJ) who conducted the hearing found that the existence of more than 1350 jobs which the plaintiff could perform despite a reduced residual functional capacity represented work in significant numbers. The district court disagreed, stating:

> 1,350 jobs, which is the number of jobs the vocational expert testified exist for a person of Plaintiff's residual functional capacity in the local economy, does not constitute a significant number of jobs within the meaning of the Act. *See Graves v. Secretary of H.E.W.*, 473 F.2d 807 (6th Cir.1973).

The Secretary appeals, arguing that the vocational expert's testimony satisfied the "significant numbers" requirement.

### II.

#### A.

Johnny Hall suffered a work-related back injury in January 1982 and has engaged in no substantial gainful activity since that time. Hall was 46 years old at the time of the hearing. He presented a prima facie case of disability by proof that he could not return to his former skilled or semi-skilled employment that involved heavy lifting. However, there was medical evidence that Hall could perform sedentary work as long as it did not involve lifting more than ten pounds and required no prolonged periods of sitting or standing. Based on this evidence, the ALJ concluded that Hall retains the residual functional capacity to perform at least sedentary

work that would permit alternating between sitting, standing and walking.

The vocational expert testified that there were no jobs for which Hall's skills would be transferable that would not require heavy lifting or prolonged sitting or standing. However, he stated that there were some unskilled sedentary jobs he could perform, and listed four classifications that included between 1350 and 1800 jobs in the nine-county area. On the basis of this testimony the ALJ concluded that the Secretary had carried his burden of establishing the existence of work Hall could perform in significant numbers in the national economy.

### B.

█ On appeal the Secretary maintains that evidence of 1350 to 1800 jobs which an applicant can perform in the region of his residence clearly satisfies the statutory requirement. He argues that the legislative history and court decisions show that the "significant numbers" requirement was included in the Act to prevent the denial of benefits when the evidence establishes nothing more than the theoretical existence of a minimal number of isolated jobs.

The plaintiff, in agreement with the district court, emphasizes the small percentage of the total number of jobs in the region that he could perform (0.25 to 0.33 %). He construes this court's decision in *Graves* as establishing a rule that the Secretary fails to carry his burden when the proof shows that a plaintiff is capable of performing only a small percentage of the region's jobs.

### III.

We conclude that *Graves* does not establish the rule asserted by the plaintiff and followed by the district court. The outcome in *Graves* was determined by the failure of the vocational expert to testify without qualification that jobs which the plaintiff could perform actually existed in the economy. While it is true that the court noted that the jobs listed by the vocational expert for which the plaintiff was qualified constituted only 1–5% of the

light factory jobs in the Detroit area, that finding was not the basis of the court's decision. The vocational expert had "hedged" his testimony even with respect to the jobs he listed. This qualifying testimony of the vocational expert made reliance on the estimate that the plaintiff could perform 1–5% of the total work in the area "unfounded, and an inadequate basis for [the] conclusion" that jobs in significant numbers existed. *Graves*, 473 F.2d at 809. The problem was not that the plaintiff could qualify for only 1–5% of the total number of jobs of a particular kind in the area, but that the vocational expert failed to establish that *any* of the jobs the plaintiff could perform were available. This is clear from the following statement of the court, which we construe as its holding:

> Taking into account the qualifications which the vocational expert placed upon his earlier testimony, it seems clear to us that the Secretary failed to carry his burden of showing by substantial evidence that work for which the appellant is qualified is available in significant numbers in the national economy as defined in the Act.

*Id.* at 810.

The vocational expert's testimony in the present case suffers from no such defect. Here the expert testified without qualification that there were jobs whose duties the plaintiff could perform and he listed some of them. In the four categories that he identified the witness testified that between 1350 and 1800 such jobs existed in the Dayton area. This testimony which took into account the plaintiff's limitations resulting from his injury, contained none of the qualifications that the *Graves* court found to have undermined the vocational expert's testimony in that case.

### IV.

In defining disability within the meaning of the Act, Congress spoke in terms of numbers, not of percentages. The Act provides:

> "work which exists in the national economy" means work that exists in signifi-

cant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). The applicable regulation explains the significant numbers requirement as follows:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs.

20 C.F.R. § 404.1566(b).

The legislative history of the Social Security Amendments of 1967, where this definition was first included in the Act, supports the interpretation of the requirement found in the regulations. Speaking of the "significant numbers" aspect of the definition of disability, Conference Report No. 1030 states:

> The conference agreement contains substantially the provision of the House bill, but includes language designed to clarify the meaning of the phrase "work which exists in the national economy". This language puts into the statute the same meaning of the phrase that was expressed in the reports of both committees. Under the added language, "work which exists in the national economy" means work that exists in significant numbers in the region in which the individual lives or in several regions in the country. The purpose of so defining the phrase is to preclude from the disability determination consideration of a type or types of jobs that exist only in very limited number or in relatively few geographic locations in order to assure that an individual is not denied benefits on the basis of the presence in the economy of isolated jobs he could do.

*Reprinted in* 1967 U.S.Code Cong. & Admin.News 3179, 3197–98.

As the court stated in *Walker v. Mathews*, 546 F.2d 814, 819 (9th Cir.1976), "Congress did not intend to foreclose a claimant from disability benefits on the basis of the existence of a few isolated jobs." However, when there is testimony that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area. *Graves* does not hold to the contrary, and the district court has misconstrued *Graves* in so reading it.

■ We are not blind, however, to the difficult task of enumerating exactly what constitutes a "significant number." We know that we cannot set forth one special number which is to be the boundary between a "significant number" and an insignificant number of jobs. The figure that the ALJ here found is *not* that magic number; the 1350 figure is to be viewed in the context of this case only. A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

After viewing the evidence, the ALJ here found that proof of more than 1350 jobs in the local economy which Hall could perform despite his reduced capacity established the existence of work in significant numbers. This finding of the ALJ, which became the final decision of the Secretary upon affirmance by the Appeals Council, is supported by substantial evidence and is conclusive. 42 U.S.C. § 405(g) The district court erred in granting summary judgment for the plaintiff on the "significant numbers" issue.

## V.

The plaintiff also argues that the ALJ erred in even reaching the question of the number of jobs available, since the finding that he could perform sedentary work is not supported by substantial evidence on the record as a whole. This issue is framed in terms of the deference due the medical opinion of a treating physician. It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim. *Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 536 (6th Cir.1981); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980); *Whitson v. Finch*, 437 F.2d 728, 732 (6th Cir.1971). However, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject determinations of such a physician when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984); *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 855 (6th Cir.1986).

Dr. Dwight Jacobus, Hall's treating physician, stated in an evaluation dated January 22, 1985, that Hall did not have the capacity for either light or sedentary work. The ALJ found that this conclusion was inconsistent with earlier evaluations by Dr. Jacobus despite his finding of no significant or specific changes in Hall's overall condition between the dates of the reports. The ALJ found that this inconsistency and the failure of Dr. Jacobus to identify any clinical findings that supported his later conclusion rendered his opinion unacceptable. On the other hand, Dr. James Leonard, who examined Hall at the request of the Secretary, while finding essentially the same impairments as Dr. Jacobus, evaluated Hall's residual functional capacity as permitting sedentary work which allows alternation of sitting, standing and walking. We conclude that the ALJ and the Secretary gave due deference to the opinion of the treating physician, but were required to resolve this conflict in the evidence, and that substantial evidence on the record as a whole supports the finding that the plaintiff is capable of performing sedentary work of a type that exists in the Dayton area and in the national economy.

The judgment of the district court is reversed with directions to enter judgment for the Secretary.