Harry L. BARKER, Plaintiff–Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.

No. 88–6039.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 30, 1989.

Decided Aug. 23, 1989.

As Amended Oct. 17, 1989.

Martin Taller, Law Offices of Martin Taller, Anaheim, Cal., for plaintiff-appellant.

John R. Bolton, Asst. Atty. Gen., Robert C. Bonner, U.S. Atty., Richard K. Waterman, Chief Counsel, Region IX, David R. Mazzi, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellee.

Before ALARCON and NELSON, Circuit Judges, and PATEL, District Judge.*

PATEL, District Judge:

Harry L. Barker appeals the District Court's decision affirming the Administrative Law Judge's determination that he is not disabled within the meaning of the Social Security Act, 42 U.S.C. § 301 et seq. We affirm.

BACKGROUND

Harry Barker is a 52 year-old high school graduate and former electrician. He has worked as an electrician, foreman electrician and working supervisor. Mr. Barker suffered a cerebrovascular accident in February 1982, characterized as a "small" or "slight" stroke. He suffered another incident in November 1982 and was again hospitalized for a cerebrovascular accident involving disorientation, loss of memory and withdrawn behavior. He experienced at least two other seizures in March 1983. The seizure activity has since been checked by daily doses of the medication Dilantin. No seizure episodes have occurred since April 1984. The residual symptoms of the stroke included some difficulties with speech and language, a slowing of normal mentation, and a loss of minimal degree of fine coordinating ability in the right upper extremity.

Appellant continued to work as an electrician until May 11, 1984, when he fell off a ladder, sustaining a knee injury. Appellant's application for disability benefits is based upon a combination of physical and mental impairments stemming from his cerebral vascular accidents of February and November 1982 and his March 1983 seizures.

An evaluation prepared by R. Wayne Brown, Ph.D., on December 7, 1985, found that Mr. Barker tested in the "severe" range of impairment on the Reitan Battery test. The Reitan Battery measures organic impairment by means of a variety of exercises testing concentration, coordination, memory, motor control, abstract abilities and other cognitive and physical functions.

Dr. Brown's report also indicated that appellant suffered a mild impairment of his ability to relate to others, a moderate degree of restriction of daily activities, a moderately severe limitation of his ability to comprehend and follow directions, a mild restriction on his ability to perform simple tasks and a moderate restriction on his ability to perform repetitive tasks. On his "Supplemental Questionnaire as to Residual Functional Capacity," Dr. Brown did not place Mr. Barker in the "severe" category of impairment on any of the eleven questions. He rated Mr. Barker's impairment or limitation as "moderately severe" in three areas: ability to comprehend and follow instructions, ability to perform complex tasks and ability to perform varied tasks.

Appellant applied for Social Security Disability Insurance Benefits on September 12, 1984, alleging disability onset date of

* The Honorable Marilyn Hall Patel, United States District Judge for the Northern District of California, sitting by designation.

May 11, 1984. The application was denied initially and upon reconsideration. A hearing was held on December 18, 1985. At the hearing, a vocational expert testified that despite appellant's restrictions, there were specific jobs that he would be able to perform, and cited approximately 1,000 hospital laundry worker jobs and 900 garment sorter jobs in the local economy. The expert testified that none of the cited jobs would be excluded by appellant's low-normal I.Q.

The ALJ's decision denying benefits was rendered on January 24, 1986. The ALJ found that appellant had the residual functional capacity to perform light, entry-level, unskilled jobs, taking into consideration the restrictions imposed by his impairments. Although the ALJ found that the evidence did not support plaintiff's counsel's hypothesis that the 1200 gatekeeper jobs would be precluded because of plaintiff's temperament, Tr. at 15, he found that even if these jobs were excluded, the remaining jobs constituted a significant number within the meaning of 42 U.S.C. § 423(d)(2) (1982 & Supp.1987) and *Martinez v. Heckler*, 807 F.2d 771 (9th Cir.1986).

The Appeals Council denied appellant's request for review on May 7, 1986, declaring that the ALJ's decision of January 24, 1986 stands as the final decision of the Secretary. Appellant filed a civil complaint in the Central District of California on June 3, 1986. The United States Magistrate issued his findings on March 6, 1988. In a judgment entered on April 5, 1988, the United States District Court adopted the recommendation of the Magistrate and upheld the Secretary's decision.

On July 9, 1986, while appellant's civil action was pending, he filed a new application for Social Security Disability Benefits. After an initial denial, the claim was granted upon reconsideration. An Award Certificate was issued on January 24, 1987 with an onset of disability date of January 25, 1986.

With this appeal, Mr. Barker seeks benefits for the period from the alleged date of the onset of his disability, May 1984, through January 24, 1986, the date his disability payments began. Mr. Barker contends that there is no substantial evidence that there is a significant number of jobs in the national economy that he can perform, arguing that jobs performed principally or often by retarded workers "under special conditions" should not be included in the calculation of total number of jobs, and that the number should be compared to the population of the relevant geographical area, Los Angeles and Orange Counties. He further argues that the ALJ erred by refusing to permit counsel to ask certain questions of the vocational expert. Finally, Mr. Barker argues that there is no substantial evidence in the record that his psychiatric impairment does not meet the criteria of Section 12.02 of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (1988), and that he is therefore entitled to benefits.

LEGAL STANDARD

■ To qualify for disability benefits, the claimant must establish a medically determinable physical or mental impairment that is expected to result in death or last for a continuous period of at least twelve months which prevents him or her from engaging in substantial gainful activity. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir.1984).

This court may reverse the Secretary's decision that a claimant is not disabled "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir.1987). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Sprague*, 812 F.2d at 1230. Our review, however, "must consider the record as a whole," not just that part which supports the Secretary's decision. *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.1988).

DISCUSSION

*I. Appellant's Disability Under Section 12.02*

■ We turn first to appellant's challenge to the ALJ's determination that he is

not disabled within the meaning of Section 12.02 of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (1988). This challenge is a threshold issue because if this court reverses the ALJ's finding under Section 12.02, it would thereby establish that appellant is presumptively disabled without consideration of the vocational factors raised by appellant's other arguments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (1988).

To be found disabled within the meaning of Section 12.02, which pertains to organic mental disorders, appellant must establish a "loss of specific cognitive abilities or affective changes" as described in Subdivision A *and* that condition must result in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Part 404, Subpt. P., App. 1 (1988).

The ALJ found that appellant met the criteria for loss of cognitive abilities under Subdivision A, but did not meet at least two of the Subdivision B criteria as required for a finding of disability. Appellant argues that this finding of the ALJ is not supported by substantial evidence.

The ALJ found a moderate functional limitation in the first two Subdivision B criteria, activities of daily living and maintaining social functioning. Appellant argues that the report of Dr. Brown, the psychiatrist who examined Mr. Barker in December 1985, supports a greater degree of impairment. Appellant notes that Dr. Brown found that appellant's "social as well as family life has become quite limited

... Generally, he tries to avoid most people and any stressful situations." Tr. at 288. The Secretary points out, however that Dr. Brown's description apparently came primarily from appellant himself and that the information reflected in the report is refuted to some extent by appellant's testimony at the hearing. For example, appellant testified that he visited neighbors, shopped for groceries, and drove an automobile. His wife testified that appellant visited his brother with the same frequency as before the stroke, and that he continued to socialize or go out with friends, although less frequently than before. *See* Tr. at 54–76.

The report of Dr. Haberland, who evaluated Mr. Barker on March 8, 1985, also supports the Secretary to some degree. Dr. Haberland described Mr. Barker as "pleasant and cooperative" in the interview, Tr. at 221, and after describing Mr. Barker's medical condition noted that Mr. Barker "would experience *some* difficulty relating to others including fellow workers and supervisors." Tr. at 223 (emphasis added). Although Dr. Haberland did not describe this interactive difficulty as severe or marked, he did note that appellant "would find it very difficult to withstand the stress and pressures associated with day-to-day work activity." *Id.* The record does not reveal whether Dr. Haberland was referring to stress associated with contact with others or job pressures unrelated to interaction.

If the court holds that the Secretary's finding that Mr. Barker has only a "moderate" rather than a marked difficulty in maintaining social function is not supported by substantial evidence, appellant must also establish that he meets a second of the criteria listed in Subdivision B. Appellant argues that the evidence supports a finding that Mr. Barker meets the third criterion because he suffers a "frequent failure to complete tasks in a timely manner."

Appellant cites the testimony of his spouse, Beverly Barker, noting in particular her description of two incidents in which appellant had difficulty understanding the directions for home appliances

(a water softener and a kerosene heater). In both the cited instances, however, appellant did eventually comprehend what was required to install the appliances. Appellant himself testified that he did not read the relevant part of the directions to the heater before attempting to use it, but that nonetheless he was able to make it work after taking it apart and reassembling it. These difficulties, therefore, seem to relate more to Mr. Barker's difficulty in understanding complex written directions than in completing tasks. The jobs for which the ALJ found him qualified, including laundry worker, garment sorter and gatekeeper, do not involve complex written instructions. The Secretary's determination that Mr. Barker does not have such deficiencies of concentration, persistence or pace as to result in frequent failure to complete tasks in a timely manner is supported by substantial evidence.

Because the Secretary's determination that Mr. Barker does not meet the criteria of Section 12.02, Subdivision B, is supported by substantial evidence, we affirm that determination.

## II. Number of jobs existing in the economy

■ An individual is disabled within the meaning of the Social Security Act only if his or her impairments are

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. ... "[W]ork which exists in

the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A) (1982 & Supp.1987).

There is no dispute that appellant cannot return to his former occupation as an electrician. Based in part on the testimony of the vocational expert, the ALJ found, however, that a significant number of jobs Mr. Barker could perform existed in the national and local economy. The jobs cited by the ALJ include approximately 1,000 hospital laundry worker jobs and 900 garment sorter jobs.[1] The ALJ also found, contrary to the suggestion of counsel, that Mr. Barker's impairments would not prevent him from gaining employment as a gatekeeper, stating that "the undersigned does not find such an assumption [that appellant's limitations would render him unable to perform the gatekeeper job] supported by the record as a whole ..." Tr. at 15.[2] The vocational expert testified that there are approximately 1200 gate keeper jobs in the relevant geographical area.

This Circuit has never clearly established the minimum number of jobs necessary to constitute a "significant number." In *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir.1986), the court upheld the ALJ's finding that 3,750 to 4,250 jobs were a significant number. The Sixth Circuit has found that 1,350 jobs in the local economy constituted a significant number. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988). The Eighth Circuit has held that as few as 500 jobs were a significant number. *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir.1988). Decisions by district courts within this circuit are also consistent with the Secretary's finding in this case. *See, e.g., Salazar v. Califano*, Unemp.Ins.Rep. (CCH, para. 15,-

---

1. Appellant also argues that the vocational expert incorrectly characterized the laundry worker job as light work, when laundry work is classified as medium work in the Dictionary of Occupational Titles (DOT). This argument is meritless, since as the vocational expert testified, his testimony referred to hospital laundry work, which he described as light work and distinguished from the commercial laundry work described in the DOT. *See* Tr. at 78.

2. In the portion of his decision labeled "Findings," the ALJ nonetheless excluded the gatekeeper jobs from consideration, basing his finding of a substantial number of jobs instead upon the 1,000 laundry worker and 900 garment sorter jobs identified by the vocational expert. Tr. at 16.

835) (E.D.Cal.1978) (600 jobs is significant number); *Uravitch v. Heckler,* CIV–84–1619–PHX–PGR, slip op. (D.Az. May 2, 1986) (even though 60–70% of 500–600 relevant positions required experience plaintiff did not have, remaining positions constitute significant number).

Under *Thompson v. Schweiker,* 665 F.2d 936, 939 (9th Cir.1982), a claimant's ability to perform sheltered work activity does not necessarily establish an ability to engage in substantial gainful work within the meaning of 42 U.S.C. § 423(d)(2)(A). In the instant case, the expert testified that approximately one third of the hospital laundry worker jobs in Los Angeles/Orange County are performed by retarded or otherwise handicapped people under "lenient supervision." The expert explicitly declined, however, to classify these jobs as "sheltered." In addition, appellant has presented no evidence to show that he would be ineligible for jobs with such "lenient supervision." Indeed, appellant's description of his impairment and residual mental capacity suggests that he might be eligible for such positions.

Appellant argues that despite the expert's refusal to characterize the hospital jobs as "sheltered employment," this court should nonetheless exclude them from its calculation of the number of jobs appellant could perform. If these numbers are discounted, and the 1,200 gatekeeper jobs are also excluded based on counsel's hypothetical questions to the vocational expert, appellant argues that the remaining 1266 jobs do not constitute a "significant number" in the context of the Los Angeles/Orange County area.

The court need not reach the issue of "semi-sheltered" employment, however, for even if one third of the hospital laundry jobs and an analogous one third of the garment worker jobs, as appellant urges, are excluded from the total as "semi-sheltered," the remaining 2,466 jobs constitute a significant number under the case law from other circuits and district courts within this circuit. The court declines to exclude the gatekeeper jobs from consideration because the ALJ's determination that the record does not support appellant's inability to perform those jobs is supported by substantial evidence. Even if the 1,200 gatekeeper jobs are excluded, however, the remaining 1,266 jobs are within the parameters of "significant numbers" found in *Hall, Jenkins, Salazar* and *Uravitch.*

■ Appellant's suggestion that the number of jobs must be considered in the context of the geographical area at issue, or in light of the population of the area, was considered and rejected by this court in *Martinez v. Heckler,* 807 F.2d 771, 775 (9th Cir.1986). We are compelled to follow the holding in *Martinez,* in which the court, rejecting the ratio analysis of the Sixth Circuit in *Graves v. Secretary,* 473 F.2d 807 (6th Cir.1973), stated:

> The claimant urges us to ignore the number of jobs he is able to perform with his limitations and to analyze the ratio of jobs to the general population of the Greater Metropolitan Los Angeles and Orange County area. We decline. Even if we had credible numbers on total existing light jobs, an analysis of the ratio of light jobs the claimant could perform to the total existing light jobs, as applied in *Graves,* is unwarranted. The plain language of the regulations do [sic] not contemplate a ratio analysis. The regulations speak in terms of whether a significant *number* of jobs exist that the claimant is capable of performing.

*Martinez,* 807 F.2d at 775. Indeed, the Sixth Circuit itself recently rejected the "percentage" approach implicitly adopted in *Graves. Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988) ("when there is testimony that a significant number of jobs exists …it is immaterial that this number is a small percentage of the total number of jobs in a given area.")

Despite the logic of appellant's argument, that a number which is significant in a relatively small area such as Dayton, Ohio (the area in question in *Hall* ), is not necessarily equally significant in the Los Angeles metropolitan area, this court is foreclosed under *Martinez* from revisiting it. The court therefore concludes that the Secretary's determination that there exists

**1480**

a significant number of jobs appellant could perform is supported by substantial evidence.

### III. Questioning of the vocational expert

At the hearing, appellant's counsel sought to question the vocational expert about what, in the expert's opinion, constitutes a significant number of jobs. The ALJ refused to permit the question, stating, "No, it's my job to determine what's significant and what isn't." Tr. at 85.

Appellant argues that the ALJ's refusal to permit the question constitutes error, and that this court must remand the case to permit the inquiry. Appellant cites *Hall v. Bowen*, 837 F.2d 272 (6th Cir.1988), in which the Sixth Circuit noted that in determining whether work exists in significant numbers, courts should consider a variety of factors including the level of disability, the credibility of the vocational expert, the distance the claimant is capable of travelling to work, the isolated nature of the jobs, and the types and availability of such work. *Id.* at 275.

*Hall* provides no support for appellant's argument here, for the question appellant sought to ask the vocational expert in the case at bar was not designed to elicit testimony on any of the criteria named in *Hall.* The ALJ was correct in concluding that the expert's *opinion* about what constitutes a significant number of jobs is not relevant. *See Martinez*, 807 F.2d at 775 ("whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact *to be determined by a judicial officer.*") (emphasis added). While the ALJ could have allowed the question, his decision to refuse it was not error. *See Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir.1983) ("a claimant in a disability hearing is not entitled to unlimited cross-examination, but rather 'such cross-examination as may be required for a full and true disclosure of the facts.'") (quoting 5 U.S.C. § 556(d)).

### CONCLUSION

The Secretary's determination that appellant is not disabled under Section 12.02 of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, is supported by substantial evidence. Also supported by substantial evidence is the Secretary's finding that there is a significant number of jobs in the national economy appellant could perform. Finally, the ALJ's refusal to allow certain questions to be asked of the vocational expert was not error. Accordingly, the District Court's decision upholding the Secretary's determination is AFFIRMED.