889 F.2d 1088
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ruben SHEPHERD, Plaintiff-Appellant
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee
 No. 89-5229.
 United States Court of Appeals, Sixth Circuit.
 Nov. 27, 1989.
 
 Before MERRITT, Chief Judge, KENNEDY, Circuit Judge, and R. ALLAN EDGAR, District Judge.*
 MERRITT, Chief Judge.
 
 
 1
 This is an appeal from the District Court's denial of claimant's application for Supplemental Social Security benefits under the Social Security Act, 42 U.S.C. Secs. 301 et seq. After an Administrative Law Judge consolidated and denied claimant's applications for Supplemental Social Security Income, the Appeals Council denied review. The District Court adopted the magistrate's report and recommendation to affirm the Secretary's decision. From the District Court's order entering summary judgment in favor of the Secretary the claimant appeals. He raises two issues for review: 1) whether the Secretary's finding that claimant did not have an impairment under 20 C.F.R. Part 404, Subpt. P, App. 1, Sec. 12.05 is supported by substantial evidence; and 2) whether the Secretary's finding that claimant could perform a substantial number of jobs in the national economy is supported by substantial evidence.
 
 
 2
 Claimant, an illiterate coal miner, was fifty years old at the time of the ALJ's decision. He stopped working in 1973, and contends that bronchitis, headaches, arthritis, mental retardation, and emotional disorders prevent him from working. The claimant carries the burden of proving that he meets an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. This claimant purports to satisfy Secs. 12.05(B) and (C) of the listing.
 
 
 3
 Section 12.05(B) requires "[a] valid verbal, performance, or full scale IQ of 59 or less." Claimant took five IQ tests. The first, given in 1982 by Mr. Leisenring, yielded a score of 70. The second, given in 1983 by Dr. Maggard, also yielded a score of 70. Dr. Maggard performed another test in 1986, this time with a score of 65. Dr. Maggard invalidated this score, however, noting that claimant intentionally gave wrong answers and showed signs of malingering. Mr. Leisenring administered a fourth test later in 1986, but invalidated the claimant's score of 54 due to the probability of malingering. A fifth test, given in 1986 by Ms. Bayer, yielded a score of 57. But as the Secretary observed, Ms. Bayer failed to submit a detailed test report in accordance with 20 C.F.R. Part 404 Subpt. P, App. 1, Sec. 12.00(D). Viewing the expansive record as a whole, the ALJ properly discounted Ms. Bayer's evaluation of the claimant in favor of the contrary evidence obtained from other experts.
 
 
 4
 Section 12.05(C) requires evidence of mental retardation, a showing of a valid IQ score of 60 to 69, and a physical or other mental impairment imposing additional and significant work-related limitations on the claimant. As the evidence discussed above reveals, two of the IQ tests were above 69, and two other tests were invalid. Only Ms. Bayer's report, which the ALJ found to be deficient under Sec. 12.00(D), states that claimant's IQ is validly in the 60-69 range.
 
 
 5
 In response, claimant insists that under Sec. 12.05(C), Dr. Maggard's most recent IQ test score of 65, coupled with claimant's arthritis, bronchitis, depression, and anxiety demands a finding of disability. But as the magistrate concluded, this IQ test was invalid due to bad faith and malingering. Accordingly, there is substantial evidence to support the Secretary's finding that the claimant has not met the requirements of Sec. 12.05(C).
 
 
 6
 Claimant also contends that the record lacks substantial evidence that he can perform a substantial number of jobs existing in the national economy. While the record does contain some evidence of disability, substantial evidence supports the finding that claimant could perform the jobs identified by the vocational expert. Cf. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (administrative decisions are not subject to reversal just because substantial evidence would have supported opposite conclusion). Several medical experts testified as to claimant's limitations. They concluded that claimant could perform gainful employment, that there was no clinical support for claimant's subjective complaints of back pain and respiratory problems, and that old fractures of the left knee and ankle did not significantly limit claimant's ability to stand or walk.
 
 
 7
 Further, the ALJ properly discounted the finding of disability by two internists, one of whom based his conclusions on claimant's mental deficiencies, and the other whose findings lacked the support of any medical data. See Houston v. Secretary of Health & Human Servs., 736 F.2d 365, 367 (6th Cir.1984) (ALJ may reject doctor's opinion that lacks sufficient medical data). After evaluating the medical evidence, the magistrate concluded that claimant exaggerated the disabling effect of his physical and mental conditions. Although claimant's condition would limit him to exertionally medium, unskilled manual labor, he could perform groundskeeping, janitorial, or low-risk, security-guard work, provided that the work environment was dust- and fume-free.
 
 
 8
 Finally, claimant contends that a hypothetical posed to the vocational expert did not represent the true picture of his physical and mental impairments. It is uncontroverted that claimant's previous work as a coal miner was exertionally heavy and involved no transferable skills. Accordingly, the ALJ asked the vocational expert a hypothetical assuming that the claimant had particular intellectual, task-oriented, and social limitations. Despite these restrictions the vocational expert testified that claimant could perform 10% of the 800 medium occupations recognized by the Secretary.[1] Cf. Hall v. Bowen, 837 F.2d 272, 274-75 (6th Cir.1988) (four occupations consisting of 1/4 of 1% of all jobs in an area may be a substantial number of jobs; this determination should be left to the ALJ). The parties debate whether the hypothetical accurately depicted claimant's circumstances. Again, each side selectively relies on different testimony. Although the expansive medical and psychological testimony is by no means one-sided, there is substantial evidence to support the ALJ's use of the hypothetical.
 
 
 9
 Accordingly, the District Court's denial of Supplemental Security Income is affirmed.
 
 
 
 *
 The Honorable R. Allan Edgar, Judge of the United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 All of these jobs would be in a dust- and fume-free environment. Although they comprise only 10% of the medium occupations listed by the Secretary, they comprise over 1,000,000 jobs. The jobs are: seed cutter (22,500 jobs), package sealer (400,000 jobs), meat molder (275,000 jobs), and washing machine tender (250,000 jobs)