961 F.2d 1580
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Darrell Ray VICK, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 91-5410.
 United States Court of Appeals, Sixth Circuit.
 May 6, 1992.
 
 Before NATHANIEL R. JONES, BOGGS and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Darrell Vick appeals from the district court's decision upholding the Secretary of Health and Human Service's denial of his application for benefits. Because the Secretary's decision is supported by substantial evidence, and because we find no other legal error, we affirm.
 
 
 2
 * Mr. Vick has a high school education and worked as a cable splicer and sawmill laborer. On March 18, 1982, he applied for disability insurance benefits, alleging disability due to back trouble and hearing problems that date from July 11, 1980. Mr. Vick's insured status ended on December 31, 1986, and he has engaged in no substantial gainful activity since his alleged disability began. On July 5, 1983, an Administrative Law Judge denied Mr. Vick's application for benefits on the grounds that he did not have a severe impairment. The Appeals Council declined further review, and the federal district court affirmed the Secretary's determination of nondisability. However, this court reversed, and remanded the case with instructions that the Secretary complete the sequential analysis required by 20 C.F.R. § 404.1520. Vick v. Secretary of Health and Human Serv., No. 86-5478 (6th Cir. May 19, 1987).
 
 
 3
 On remand, the ALJ who had originally heard the case presided over a supplemental hearing, and considered the following evidence regarding Mr. Vick's back ailments. In a report dated October 3, 1980, Dr. Charles A. Barlow stated that x-rays of Mr. Vick's lumbar spine showed complete sacralization of the fifth lumbar segment, with sclerosis and narrowing of the L5 sacral facet joints. He also reported that conservative therapy had failed to provide Mr. Vick with much relief of his back pain. Dr. Everett I. Howell, in a report dated October 17, 1980, found that a myelogram, a bone scan, and arthritis studies taken during October 1980 were all normal. Dr. Howell had started Mr. Vick on physical therapy and prescribed a transcutaneous electronic nerve stimulator (a TENS unit); these actions had caused some improvement. In another report dated November 17, 1980, Dr. Howell said that a physical examination had shown no "solid reason" for Mr. Vick's back pain. He recommended that Mr. Vick continue using his TENS unit and return to light work activity.
 
 
 4
 On October 6, 1981, Dr. Howard M. Gendell issued a report stating that he had treated Mr. Vick for complaints of intermittent catching of his lower back. He had hospitalized Mr. Vick for this problem in August 1981, but noted that Mr. Vick had not followed a prescribed physical therapy program. He told Mr. Vick that his problems would continue unless he performed the recommended exercises.
 
 
 5
 On November 30, 1981, Mr. Vick was hospitalized again to treat his worsened back pain. Dr. James Brashear, a family practitioner, noted that Mr. Vick had been hospitalized on several other occasions due to his low back pain. However, during this particular stay, x-rays of Mr. Vick's lumbar spine showed normal lumbar vertebrae. Physical examination showed some tenderness and back spasms, and Dr. Brashear attributed Mr. Vick's pain to a sacroiliac joint problem. He prescribed Valium and Parafon Forte and discharged Mr. Vick on December 13, 1981. However, Dr. Brashear again hospitalized Mr. Vick on January 31, 1982 due to complaints of back pain. Daily physical therapy eventually caused slow improvement in Mr. Vick's symptoms, and he was discharged on March 2, 1982, to return to his usual activities while taking medication.
 
 
 6
 Dr. James M. Donley examined Mr. Vick on June 1, 1982, and reported that he found no neurological defect or motor loss. Neither x-rays nor an epidural myelogram revealed any problems with Mr. Vick's spine. According to a report dated July 20, 1982, Dr. Donley last saw Mr. Vick on July 7, 1982, when he told Mr. Vick that he faced no restrictions and was "certainly employable." Dr. Donley also stated that he found that Mr. Vick suffered no significant disability or impairment, and noted that Dr. Brashear had referred Mr. Vick to a chiropractor, Dr. Howard L. Snyder. In a report dated July 13, 1982, Dr. Snyder reported treating Mr. Vick since March 10, 1982, with no improvement in his condition. Dr. Snyder diagnosed severe, palpable lumbar muscle spasm, probable edema in the lumbar spine, and lessened strength in the left lower extremity. Dr. Snyder believed that x-rays of Mr. Vick's lumbar spine revealed a severe sprain and strain, and he stated that Mr. Vick's problem was incurable.
 
 
 7
 Dr. M. Anwarul Quader, an orthopedic specialist, examined Mr. Vick on March 23, 1983, and reported that a neurological examination demonstrated no motor, reflex, or sensory problems. He also found no deformity or muscle spasm in Mr. Vick's spine, although the lower back and sacroiliac joints revealed some tenderness. While Mr. Vick walked slowly, and with some back pain, he needed no brace or walking aid. He could also squat and stand on his tiptoes. Dr. Quader concluded that Mr. Vick suffered from a degenerative lumbar disc disease, but that surgery would worsen his ailment.
 
 
 8
 The ALJ concluded that this evidence failed to establish that Mr. Vick's back problem met or equaled any listed impairment in Appendix 1 of Subpart P of 20 C.F.R. Part 404, which would have rendered him automatically disabled under 20 C.F.R. § 404.1520(d). The ALJ believed that Mr. Vick suffered some pain, but found little clinical evidence to substantiate the amount of disability claimed. He also concluded that Mr. Vick had exaggerated his back pain, and refused to accept Mr. Vick's testimony that his pain is so severe that he cannot work a full eight-hour day. The ALJ also emphasized that although Dr. Brashear supports Mr. Vick's complaints, he is a family practitioner and gave conflicting statements of Mr. Vick's amount of disability. Dr. Donley, Dr. Quader, and Dr. Barlow are specialists in spine problems, and the ALJ decided that their opinions should be given greater weight than those of Dr. Brashear and Dr. Snyder. Based on these reports, "and giving the claimant the benefit of every doubt as to his allegations of pain and limitations," the ALJ determined that Mr. Vick "is limited to no more than light work activity and that he can perform that work only if he is allowed to sit and stand intermittently throughout the course of a day."
 
 
 9
 The ALJ also considered Mr. Vick's hearing problems. In March 1983, Dr. Uday Dave stated that Mr. Vick is deaf in his right ear and has sixty-four percent speech discrimination in his left ear with a hearing aid. He recommended that Mr. Vick avoid loud noises and continue wearing a hearing aid. As for Mr. Vick's testimony regarding his hearing difficulties, the ALJ concluded that Mr. Vick's claims could not be supported by the record, and that he had exaggerated his deafness at his hearing. Finally, while Mr. Vick testified to severe drowsiness caused by pain-relieving medications, the ALJ found no report of such complaints from any of his treating physicians.
 
 
 10
 Dr. Joel Dill testified as a vocational expert at a supplemental hearing on Mr. Vick's claim. In response to hypothetical questions, Dr. Dill stated that Mr. Vick could not work if he suffered all the limitations he claimed or if he could only work three to four hours a day, as stated by Dr. Brashear. The ALJ then asked him to assume that Mr. Vick could sit and stand for an hour at a time, that he could alternate between sitting and standing throughout a full day's work, that he could lift and carry ten pounds frequently and twenty pounds occasionally, that he was deaf in his right ear and had only sixty-four percent discrimination in his left ear, that he suffered from situational depression, and that although his medications might cause some sleepiness, they did not significantly impair his concentration or cause severe drowsiness. The ALJ also asked Dr. Dill to assume certain facts about Mr. Vick's ability to use his hands and feet. The vocational expert testified that under these conditions, Mr. Vick could perform substantial gainful activity, and could perform at least 1,100 jobs within his home region, a 150-mile radius of Madisonville, Kentucky.
 
 
 11
 Because the ALJ believed that this hypothetical question accurately reflected the facts, he determined that Mr. Vick was not disabled, as defined by the Social Security Act, at any time on or before his insured status ended. Mr. Vick then took his case to the Appeals Council, which adopted the findings and conclusions of the ALJ's recommended decision on January 5, 1989. Mr. Vick then appealed to federal district court. The case was assigned to a magistrate, who recommended that the complaint be dismissed. The district court followed this recommendation, and granted summary judgment to the Secretary on January 31, 1991. This timely appeal followed.
 
 II
 
 12
 Mr. Vick raises several issues on appeal. He notes that Dr. Brashear has treated him since 1971, and claims that Dr. Brashear should be considered his only treating physician. Thus, he reasons, Dr. Brashear's testimony should receive greater weight than the findings of the specialists who examined him. Mr. Vick also contends that significant evidence supports the physical ailments he has claimed. Furthermore, he contends that the ALJ erred by underestimating his hearing difficulties, and failed to evaluate his complaints of pain properly. Mr. Vick also argues that the ALJ erred because he did not apply Social Security Rule 88-13, which provides a number of specific factors to be considered by an ALJ in analyzing evidence of pain. The ALJ in this case did not explicitly follow this procedure, and Mr. Vick argues that this case must at least be remanded for this purpose.
 
 
 13
 Mr. Vick also charges that the ALJ failed properly to evaluate other limitations on his ability to work. He testified that medicine prescribed by Dr. Brashear made him too sleepy to drive a car. Furthermore, Mr. Vick claims to suffer from depression, dizziness, and severe headaches. He also contends that he lacks the necessary skills, aptitude, or education to perform desk work or light supervisory activities. For example, while the ALJ indicated that Mr. Vick has a twelfth-grade education, some evidence indicates that he reads at a ninth-grade level. Next, he contends that the ALJ failed to give proper weight to a report dated May 16, 1983, by the Kentucky Department of Education's Bureau of Vocational Rehabilitation. This report concludes that Mr. Vick "has been determined too severe [sic] to benefit from [Vocational Rehabilitation Services] in order to return him to the job market." Finally, Mr. Vick concludes that because the ALJ erred in evaluating both the medical and vocational evidence, his hypothetical questions of the vocational expert were defective. He also insists that the ALJ's hypothetical question did not include Mr. Vick's allegations of pain, overestimated his ability to hear, and failed to consider adequately his difficulty in dealing with loud noises.
 
 
 14
 Before discussing these claims, we must first address the relevant law. Under 20 C.F.R. § 404.1520, the Secretary conducts the following five-step analysis to determine if an individual is disabled for the purposes of the Social Security Act. First, an individual who is engaged in "substantial gainful activity" is not disabled, regardless of medical findings. Second, no one is disabled unless he has a "severe impairment." Third, someone who is not working, suffers from a severe impairment that has lasted for a certain time, and meets or equals a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. Part 404 is disabled regardless of vocational factors. Fourth, anyone who can do work that he has done in the past is not disabled. Finally, if an individual cannot perform his previous work, other factors such as "residual functional capacity" must be considered to determine if he can perform other work. Such work "exists in the national economy where there is a significant number of jobs ... having requirements which [the claimant is] able to meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b).
 
 
 15
 A claimant for disability insurance must prove that he became disabled before his insured status ended. See, e.g., Mullis v. Bowen, 861 F.2d 991, 994 (6th Cir.1988). Mr. Vick, therefore, must prove that he was disabled prior to December 31, 1986. To do so, he had to present medical evidence showing the severity of his ailments. Once the Secretary found that Mr. Vick could no longer perform his previous work, the burden shifted to the government, which had to prove "that there is substantial work in the national economy which the claimant can perform." Burton v. Secretary of Health and Human Serv., 893 F.2d 821, 822 (6th Cir.1990). If the government presented such proof, Mr. Vick then had to prove that he could not do the proposed alternative work.
 
 
 16
 While this court may reverse the Secretary's decision, our "review of the Secretary's findings is limited to an inquiry into whether they are supported by substantial evidence." McCormick v. Secretary of Health and Human Serv., 861 F.2d 998, 1001 (6th Cir.1988); see also 42 U.S.C. § 405(g). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Duncan v. Secretary of Health and Human Serv., 801 F.2d 847, 851 (6th Cir.1986) (quoting Kirk v. Secretary of Health and Human Serv., 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957, 103 S.Ct. 2428 (1983)). "[T]he court may not try the case de novo nor resolve conflicts in evidence, nor decide questions of credibility." Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987). If the Secretary's decision is supported by substantial evidence, this court "may not even inquire whether the record could support a decision the other way." Smith v. Secretary of Health and Human Serv., 893 F.2d 106, 108 (6th Cir.1989).
 
 
 17
 To meet its burden of proof that Mr. Vick could find a job, the government presented Dr. Dill's testimony to demonstrate the existence of work that Mr. Vick could perform. As noted earlier, Dr. Dill identified at least 1,100 jobs within 150 miles of Madisonville, Kentucky that Mr. Vick could fill, even if he were under numerous limitations. Such testimony provides a sufficient basis for the Secretary's finding that Mr. Vick could perform alternative work, if the vocational expert adequately considered Mr. Vick's medical problems. See, e.g., 20 C.F.R. § 404.1566(e); Born v. Secretary of Health and Human Serv., 923 F.2d 1168, 1174 (6th Cir.1990). Thus, we must determine whether substantial evidence supports the hypothetical question posed to Dr. Dill. If a "hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints." Blacha v. Secretary of Health and Human Serv., 927 F.2d 228, 231 (6th Cir.1990); see also Hardaway v. Secretary of Health and Human Serv., 823 F.2d 922, 927-28 (6th Cir.1987).
 
 
 18
 In this case, substantial evidence supports the Secretary's assessment of Mr. Vick's back problems. None of the specialists who treated Mr. Vick's back found objective medical evidence of a disabling problem. Dr. Howell, a neurological surgeon, found no evidence of any neurological problem sufficient to support his claims. Dr. Gendell attributed Mr. Vick's pain largely to his failure to follow a prescribed exercise program. Dr. Donley not only concluded that Mr. Vick was not disabled, but specifically stated that he was employable. Neither Dr. Quader nor Dr. Cox found evidence of severe motor, reflex, or sensory problems. In light of these facts, we must conclude that substantial evidence supports the ALJ's decision that Mr. Vick's back did not prevent him from working. Although Dr. Brashear and Dr. Snyder support Mr. Vick's complaints, that does not justify our reversing the ALJ's ruling. As noted earlier, this court merely determines whether the finding was supported by substantial evidence, and does not decide questions of credibility.
 
 
 19
 By definition, this allows for a case in appropriate circumstances to be decided either way on the same record. The fact that a record may also possess substantial evidence to support a different conclusion than that reached by the ALJ or that a reviewing judge might have decided the case differently is irrelevant.
 
 
 20
 Crisp v. Secretary of Health and Human Serv., 790 F.2d 450, 453 n. 4 (6th Cir.1986).
 
 
 21
 We also believe that the ALJ gave sufficient consideration to Mr. Vick's hearing loss. In fact, the ALJ specifically asked the vocational expert to assume that Mr. Vick was deaf in his right ear and had only sixty-four percent discrimination in his left ear. Moreover, the vocational expert specifically testified that none of the jobs that he suggested for Mr. Vick require "hearing acuity." As for Mr. Vick's claims of drowsiness, dizziness, depression and headaches, we note that the ALJ asked the vocational expert to assume that Mr. Vick suffered from situational depression, that his medicine may make him sleepy, and that he would have trouble with loud noises. Thus, these problems did receive some consideration. Furthermore, the only evidence cited by Mr. Vick regarding dizziness is an office note made by Dr. Brashear in 1987, after Mr. Vick's insured status had expired. Finally, we note that in March 1984, Dr. Carol Ruff gave Mr. Vick a psychological evaluation, and found "no evidence of a major emotional disturbance." In light of these facts, we hold that substantial evidence supports the ALJ's treatment of Mr. Vick's alleged non-exertional limitations.
 
 
 22
 Furthermore, we find no error in the ALJ's refusal to consider the Kentucky Department of Education's 1983 finding that Mr. Vick's impairments prevented a successful return to the job market. Under 20 C.F.R. § 404.1504, "a determination made by another agency that [a claimant is] disabled or blind is not binding on [the Secretary]." Furthermore, the Appeals Council offered a lengthy explanation of the flaws in the Department of Education's analysis:
 
 
 23
 Dr. Quader's poor prognosis and recommendation that the claimant not enroll in a vocational rehabilitation program appear to be the primary basis for the vocational rehabilitation agency's finding him unsuitable for vocational rehabilitation. As stated hereinbefore, Dr. Quader's conclusions, based on one visit, are simply not supported by his clinical data--no motor, reflex or sensory abnormality, nor any deformity of the low back area, despite claimant's allegation of tenderness; and the claimant could heel-and-toe without difficulty although he had a slow gait and favored his left leg.
 
 
 24
 As for Mr. Vick's educational status, the record presents no evidence that Mr. Vick's academic skills are significantly below those of the average high school graduate of his age. Furthermore, the Appeals Council found that Mr. Vick's ninth-grade reading level did not alter the ultimate conclusion of "not disabled," but merely replaced Rule 202.21 of 20 C.F.R. Part 404, Subpart P, Appendix 2 with Rule 202.18.
 
 
 25
 We also find no error in the ALJ's evaluation of Mr. Vick's subjective complaints, nor in his conclusion that these complaints were not believable. See, e.g., McCormick v. Secretary of Health and Human Serv., 861 F.2d 998, 1003 (6th Cir.1988) (court rejected a claim when the only evidence to support it was the claimant's own testimony, which two ALJ's found not credible). Furthermore, the ALJ could properly consider Mr. Vick's demeanor at the hearing. "[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant." Villarreal v. Secretary of Health and Human Serv., 818 F.2d 461, 463 (6th Cir.1987) (quoting Houston v. Secretary of Health and Human Serv., 736 F.2d 365, 367 (6th Cir.1984)).
 
 
 26
 Finally, we do not find it necessary to remand this case because of the ALJ's failure to apply Social Security Rule 88-13. This Rule was published on July 20, 1988, with an effective date for its policy of August 20, 1980. Thus, it was issued after the ALJ's decision on April 27, 1988. Furthermore, "[Rule] 88-13 does not require a remand for all cases that allege pain that have been decided since August 20, 1980." Howell v. Sullivan, 950 F.2d 343, 347 (7th Cir.1991). In fact, other courts have recognized that Rule 88-13 is consistent with existing law. "[I]f the ALJ complied with this court's precedent, it does not matter if the ALJ failed to follow [Rule] 88-13 because it does not change the law." Anderson v. Sullivan, 887 F.2d 630, 633 (5th Cir.1989) (footnote omitted).
 
 
 27
 In this circuit, "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability." Tyra v. Secretary of Health and Human Serv., 896 F.2d 1024, 1030 (6th Cir.1990). In analyzing such claims,
 
 
 28
 [W]e examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence of an underlying medical condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabled pain.
 
 
 29
 Duncan v. Secretary of Health and Human Serv., 801 F.2d 847, 853 (6th Cir.1986). "[O]ur review is limited to ensuring that substantial evidence supports the findings." Ibid. As noted earlier, the ALJ considered Mr. Vick's claims of pain, but concluded that they were not supported by the evidence, stating that "in this case there are minimal clinical findings with maximum allegations of pain." Because this conclusion is supported by substantial evidence, "[t]here is no indication that the ALJ failed to comply with the policy behind [Rule] 88-13." Howell v. Sullivan, 950 F.2d 343, 348 (7th Cir.1991).
 
 
 30
 Thus, we hold that the ALJ properly framed his hypothetical question to the vocational expert at the hearing. Furthermore, we note that the vocational expert's testimony demonstrated that Mr. Vick could perform at least 1,100 jobs in his region. Upon a review of the record, we hold that substantial evidence supports the ALJ's conclusion that this constitutes a "significant number" of jobs. "We know that we cannot set forth one special number which is to be the boundary between a 'significant number' and an insignificant number of jobs.... The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's fact situation." Hall v. Bowen, 837 F.2d 272, 275 (6th Cir.1988) (finding 1,350 jobs in the local economy to constitute a significant number). Other cases have reached similar results. In Barker v. Secretary of Health and Human Serv., 882 F.2d 1474, 1478 (9th Cir.1989), the Ninth Circuit found that 1,200 jobs in a region were a significant number. In at least one case, 500 jobs were found to be a significant number. Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir.1988).
 
 III
 
 31
 In conclusion, we hold that substantial evidence supports the decision below and that no legal error has occurred. Accordingly, the district court's decision is AFFIRMED.