917 F.2d 564
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David E. CLEVENGER, Plaintiff-Appellant
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee
 No. 90-5493.
 United States Court of Appeals, Sixth Circuit.
 Nov. 1, 1990.
 
 Before MERRITT, Chief Judge; and BOYCE F. MARTIN, Jr. and ALAN E. NORRIS, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 The Plaintiff, David E. Clevenger ("Clevenger"), has appealed from the District Court's grant of summary judgment that affirmed the Secretary of Health and Human Services' ("Secretary") denial of social security disability and supplemental security income benefits. Clevenger injured his back in a mining accident on March 19, 1987, and has not worked since. His claim for disability and supplemental security income benefits has been denied by each level of reviewing authority--Administrative Law Judge ("ALJ"), U.S. Magistrate ("Magistrate") and the District Court. Our standard of review is limited to a determination of whether the findings of the Secretary are supported by "substantial evidence."
 
 
 2
 Clevenger is a 41 year old male native of Kentucky and was employed as a coal miner until his injury suffered on March 19, 1987. Clevenger injured his back at work, and his medical odyssey began shortly thereafter with visits to various medical specialists. The first, an orthopedic surgeon, Dr. Roger Zwemer, performed a number of tests on Clevenger, including x-rays and a myelogram. Dr. Zwemer concluded that Clevenger's neurovascular status appeared to be intact, motor power was good, and reflexes were normal. Joint Appendix ("JA") at 115.
 
 
 3
 In May 1987, a neurologist, Dr. William Pearson ("Pearson") began to treat Clevenger. Clevenger underwent another myelogram, a CAT scan, chest x-ray, and a bone scan in addition to routine tests. Pearson noted that Clevenger suffered from a variety of medical problems in the lower back and spinal region that resulted in a decreased range of motion and some probable loss of sensation. JA at 117.[1]
 
 
 4
 In October 1987, Pearson wrote a letter that maintained that Clevenger had probably reached his maximum improvement possible. Pearson stated that Clevenger would not be able to return to work as a miner, and based on a September 29, 1987 examination, Pearson estimated that Clevenger had suffered a 15% impairment to his body as a whole according to the AMA Guide for Disability Rating. Pearson placed Clevenger on a 35 lb. weight lifting limit and restricted him from excessive bending, stooping and lifting. Pearson advised Clevenger not to sit in one position for more than thirty minutes at a time. JA at 129. Pearson continued to treat Clevenger clinically, but he conducted no further diagnostic testing after the October 5th visit. Thus, Clevenger could not return to the mines, but Pearson did not rule out possible jobs for Clevenger that satisfied his particular requirements.
 
 
 5
 Subsequently, Pearson changed his mind with regard to Clevenger's ability to work. Pearson's clinical observations of Clevenger included a decreased range of motion, degenerative disc disease, and arthritis of the lumbar spine.[2] Pearson maintained in a letter dated February 1, 1988 that Clevenger could not work as a result of degenerative disc disease. JA at 127.
 
 
 6
 Other doctors have examined Clevenger since his March 1987 injury. A radiologist and a specialist in respiratory medicine examined Clevenger for evidence of pneumoconiosis, or "black lung" disease. Both specialists discovered "black lung" symptoms, but they concluded that Clevenger's case was mild at the time of the examination. JA at 151, 161. In addition, another general practitioner, Dr. William West, Jr., ("West"), examined Clevenger on November 29, 1988, and concluded that Clevenger had both "black lung" disease and degenerative disc disease or a probable disc rupture. JA at 170, 171. West based his medical opinion on a clinical examination and a review of tests previously conducted by other physicians. West maintained that Clevenger was unable to work at any job that required significant use of the back. JA at 171. West conducted his examination of Clevenger after Clevenger's November 23, 1988 hearing before ALJ James J. Schmitt.
 
 
 7
 Clevenger, represented by his attorney, presented his medical evidence to the ALJ at the hearing and submitted himself to questioning. Clevenger maintained that severe back pain kept him from sleeping more than 4-5 hours and restricted his mobility to a maximum of 100 yards on level ground on a cool day. JA at 32, 33. Clevenger testified that he could sit and stand for 20-30 minutes only, too, but he testified also that he hunted and fished. JA at 100. Clevenger complained of breathing problems consistent with "black lung" disease, but he admitted to smoking five packs of cigarettes every week. JA at 39. Thus, the hearing evidence was mixed, and the ALJ faced a difficult decision.
 
 
 8
 Dr. Joel Dill ("Dill"), psychologist and vocational expert, testified at the hearing as well. Although Dill did not assess Clevenger's ability to work directly, Dill maintained that a person with Clevenger's skill qualifications--he left school at 9th grade, received a GED diploma, and had no work experience outside of underground coal mining--and physical limitations--restricted weight lifting ability, no bending, stooping, reaching, or crouching, need for frequent breaks to relieve muscle stiffness or tension, and difficulty breathing--would be able to find work. JA at 44, 45. Dill suggested that this hypothetical person might find work as a searcher/picker in the tobacco industry, a machine monitor in the electronics industry, an inspector in the electronics, plastics, and metals industries, and as a buffer or grinder in the metals industry. JA at 45.
 
 
 9
 The ALJ evaluated the available medical evidence and Clevenger and Dill's testimony, and he decided that Clevenger was not completely disabled. The ALJ found that Clevenger retained the residual functional capacity to perform light and sedentary work, and Schmitt cited Dill's examples of jobs of this sort. JA at 14.
 
 
 10
 Clevenger offers three arguments on appeal, and these arguments must succeed in an arena where our discretion is limited to whether the Secretary's findings are supported by substantial evidence and whether the correct legal standards were applied. See Richardson v. Perales, 402 U.S. 389, 401 (1971) (outlining test); McCormick v. Secretary of Health and Human Services, 861 F.2d 998, 1001 (6th Cir.1988) (applying test); Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir.1986) (same). The legal standard proscribes de novo retrials and reconsiderations of credibility questions.
 
 
 11
 Clevenger argues first that pain, unaccompanied by any objectively observable symptoms and which is intense enough to be disabling, will support a claim for disability benefits. Thus, the medical evidence and Clevenger's testimony should have compelled ALJ Schmitt to award benefits, particularly since Schmitt found Clevenger to be in pain. JA at 14.
 
 
 12
 Clevenger has not stated the correct standard of evaluation, however. In brief, the standard requires that the ALJ look for objective evidence of a claimant's subjective pain. See McCormick, supra, at 1003; Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.1986). The pain must be severe enough to prevent an individual from participating in substantial gainful activity. See Bradley v. Secretary of Health and Human Services, 862 F.2d 1224, 1227 (6th Cir.1988).
 
 
 13
 The ALJ has been given the difficult task of weighing conflicting evidence, and since the Sixth Circuit has given the trier of fact great discretion in determining the credibility of testimony, Clevenger's challenge fails. See Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.1987). The medical testimony based on diagnostic tests as well as clinical observations found Clevenger able to lift light weights. West did not rule out work entirely, but limited it to certain categories. Dill furnished examples of jobs within these physically-determined categories, and Clevenger's testimony with regard to his hunting and fishing convinced Schmitt that Clevenger was not completely disabled. Schmitt's decision is supported by substantial evidence.
 
 
 14
 Clevenger argues next that Schmitt disregarded Pearson's medical evidence with regard to Clevenger's ability to work. Although Pearson noted on October 5, 1987, that Clevenger had reached his peak improvement and could lift light weights, Pearson maintained later (Feb. and Nov. 1988) that Clevenger's condition had degenerated and left him unable to work. Pearson's assessment of Clevenger's worsened medical condition was not based on further diagnostic testing, however, and the last examining physician, West, did not rule out work entirely. No examining physician, except for Pearson in his later letters, concluded that Clevenger was completely disabled, so the Secretary's opinion is supported by substantial evidence. Clevenger has not provided objective diagnostic evidence of a completely disabling back condition, even though the Secretary has conceded that Clevenger continues to suffer considerable pain.
 
 
 15
 Last, Clevenger argues that the Secretary has not met his vocational burden of proof through his reliance on Dill's expert testimony. Specifically, Clevenger argues that Dill did not consider that Clevenger would have to leave his work station frequently for relief of his pain and that Clevenger's "black lung" symptoms prevent any further exposure to dust in some of the jobs suggested by Dill in response to Schmitt's hypothetical.
 
 
 16
 Clevenger ignores the applicable legal standard. Hypothetical questions submitted to a vocational expert are proper if the limitations posed in the hypothetical question are supported by evidence in the record. The Secretary has met his vocational burden of proof where substantial evidence supports the hypothetical questions relied on by the Secretary, and the vocational expert has testified that a significant number of suitable jobs exist in the national economy. See Maziarz v. Secretary of Health and Human Services, 837 F.2d 240, 246-7 (6th Cir.1987); Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir.1987).
 
 
 17
 The Secretary has met the legal standard. The hypothetical question emphasized Clevenger's limited range of physical abilities and formal training, and Dill accounted for the problem of dust exposure in his answer to the hypothetical question posed. Our task is not to assess credibility, and the Secretary's decision must stand if supported by substantial evidence even if the reviewing court would resolve the factual issues differently. Atterbery v. Secretary of Health and Human Services, 871 F.2d 567, 569 (6th Cir.1989). We must determine whether the Secretary has met his burden of proof, and he has here. See Hall v. Secretary of Health and Human Services, 837 F.2d 272 (6th Cir.1988). Accordingly, the judgment below is AFFIRMED.
 
 
 
 [1]
 Specifically, Pearson concluded that Clevenger's lumbar myelogram showed diffuse annular bulging at L3-L4, L4-L5, and L5-S1, with a partial amputation of the nerve root sleeve at L4-L5 on the right side possibly associated with a herniated disc. There were some degenerative disc changes at L5-S1 with small posterior osteophytes, and a CAT scan revealed diffuse annular bulging at L4-L5 and L5-S1 associated with degenerative disc disease, with a herniated nucleus pulposus at L4-L5 mostly on the right side. In terms of range of motion, Clevenger could bend forward approximately 45 degrees, hyperextend 10 degrees, left lateral bend 20 degrees and right lateral bend 20 degrees. Clevenger had decreased knee and ankle reflexes bilaterally, but the extension of both large toes was "probably normal." JA at 117
 
 
 [2]
 Pearson's observation with regard to Clevenger's decreased range of motion was not supported by a measurable decrease in range of motion, however. Clevenger's range of motion remained the same as the May 1987 measurements. JA at 127