961 F.2d 1580
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry WALDRIDGE, Plaintiff-Appellee,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellant.
 No. 91-5884.
 United States Court of Appeals, Sixth Circuit.
 April 27, 1992.
 
 Before RALPH B. GUY, Jr., NATHANIEL R. JONES, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Larry Waldridge appeals the Secretary's denial of disability benefits. Waldridge appeals on two grounds: He contends that the ALJ erred in finding that his allegations of back pain were exaggerated, and he argues that there was not substantial evidence from which the ALJ could find that there is a significant number of jobs in the economy that he can perform. We find that there is substantial evidence supporting the ALJ's findings, and therefore we affirm.
 
 
 2
 Larry Waldridge was 49 years old when the ALJ denied him benefits at a third administrative hearing. He has completed the seventh grade. He had worked as a truck driver until he sustained a back injury while working. In 1986, he had to stop work because of the back pain. He also sustained a work injury to his hand in 1985. In addition, he complains of ringing in his ears, mouth infection, weakness in his left leg, and arthritis in his right arm. He contends that he has difficulty putting on trousers, bending over, and sitting for more than 15 to 20 minutes.
 
 
 3
 Dr. Paul Sherman, one of the treating physicians, reported that Waldridge has degenerative arthritis in his hand causing a 50 to 75 percent reduction in grip strength. However, the x-rays were normal and the range of motion good. Dr. Sherman also concluded that Waldridge has degenerative arthritis of the back due to a previous wedge fracture and has significant pain. Tests did not reveal any spinal cord or nerve root compression. Dr. Sherman stated that Waldridge should not lift more than 20 pounds and not do extensive bending, stooping, lifting, prolonged driving or standing.
 
 
 4
 Sherman referred Waldridge to another treating physician, Dr. John Johnson. He diagnosed Waldridge as having Scheurerman's Kyphosis in his back, rather than a thoracic fracture. He recommended a swimming program and medication. He restricted Waldridge from prolonged bending, lifting, standing or sitting. He stated that if Waldridge would not have corrective surgery, further visits would not be helpful. The HHS physician, Dr. Ghazi, found Waldridge had degenerative changes in his spine and agreed that he had Scheurerman's deformity of the spine. He found he could bend to about ninety degrees with only some pain, and the other tests were normal. Dr. S.P. Auerback, who diagnosed Waldridge for the Equitable Group Health Insurance Co., found Waldridge "unable or unwilling" to bend forward or backward more than 10 degrees. He found that he had a 26 percent functional disability and a "very substantial disabling problem." He noted that Waldridge refused surgery.
 
 
 5
 Dr. Gamboa, a vocational expert, concluded that Waldridge has the capacity to do sedentary work, and could perform 3.71 percent of the job occupations, or 16,000 jobs, existing in his local labor market. Dr. Charles Elton, another vocational expert, found that there is a significant number of jobs that Waldridge could perform, including about 2,500 of the light assembly jobs in the Louisville area.
 
 
 6
 From this evidence, the ALJ found that Waldridge had a deformity of the spine with degenerative arthritis and degenerative disc disease; that he cannot perform his past relevant work as a truck driver; that he had limited intelligence and no transferable skills; and that he has the residual functional capacity to perform the physical exertional and non-exertional requirements of work, except for lifting more than 15-20 pounds, prolonged sitting, working at heights, working around moving machines, or working on skilled work tasks. He also found that Waldridge's allegations of pain were exaggerated. He concluded that Waldridge had the residual functional capacity to perform a significant number of jobs that exist in the national economy.
 
 
 7
 We are to review the Secretary's disability determinations by examining whether the findings of the Secretary are supported by substantial evidence. 42 U.S.C. § 405(g); McCormick v. Secretary of HHS, 861 F.2d 998, 1001 (6th Cir.1988); Landsaw v. Secretary of HHS, 803 F.2d 211, 213 (6th Cir.1986). We cannot weigh conflicting evidence or evaluate credibility. Bradley v. Secretary of HHS, 862 F.2d 1224, 1228 (6th Cir.1988). If substantial evidence supports the Secretary's decision, the decision must be affirmed, even if substantial evidence also supports a claimant's view. Smith v. Secretary of HHS, 893 F.2d 106, 108 (6th Cir.1989).
 
 
 8
 Waldridge first argues that the ALJ erred in finding that his allegations of pain were not credible. Subjective allegations of disabling pain cannot alone support a finding of disability. Duncan v. Secretary of HHS, 801 F.2d 847, 852 (6th Cir.1986). In evaluating an ALJ's determination of pain, this Court must apply a two prong test:
 
 
 9
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 10
 Id. at 853. Here, even the Secretary admits that the first prong of the test was met because Waldridge had a severe impairment of the spine. However, Waldridge does not meet (1) or (2) under the second print because objective medical evidence does not confirm the severity of the pain and the condition cannot be expected to produce such pain.
 
 
 11
 The ALJ determined that Waldridge's "allegations of pain and other symptomatology are exaggerated and not credible." He based this on his own observations, Waldridge's refusal to undergo surgery, and a comparison between the physicians' restrictions on Waldridge and Waldridge's complaints. Although an ALJ cannot discount pain because of his observations alone, the ALJ need only "cite some other evidence for denying a claim for pain in addition to personal observation." Weaver v. Secretary of Health & Human Servs., 722 F.2d 310, 312 (6th Cir.1983). Here, the ALJ did cite some other evidence for finding that the allegations of pain were exaggerated. The physicians here did not put any significant work restrictions on Waldridge, and their test results were for the most part negative. Dr. Sherman found Waldridge's back pain was significant, but stated that Waldridge could still lift 15-20 pounds and sit for up to five to six hours with only "soreness." Dr. Ghazi noted that Waldridge could move up to 90 degrees with only some pain. And, although the ALJ could not discredit Waldridge's testimony merely because he refused surgery if there is objective medical evidence indicating his fears are reasonable, Ratliff v. Celebrezze, 338 F.2d 978 (6th Cir.1964), the refusal to follow prescribed treatment can be grounds for denying benefits, Awad v. Secretary of HHS, 734 F.2d 288, 291 (6th Cir.1984). Here, there is no objective medical evidence that Waldridge's refusal to have surgery is reasonable, and evidence existed that his treating physicians suggested surgery. Therefore, the ALJ did not err in using this as one factor in discounting Waldridge's allegations of pain.
 
 
 12
 Waldridge also questions the ALJ's finding that there is a significant number of jobs he could perform. Once Waldridge was determined to have a disability, the burden shifted to the Secretary to produce substantial evidence that jobs exist in significant numbers in Waldridge's region or in several regions of the country in light of his age, education, past relevant work and medical condition. 42 U.S.C. § 423(d)(2)(A). In determining if significant numbers exist, the ALJ is to consider the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance the claimant can travel; the isolated nature of the jobs; and the types and availability of such work. Hall v. Bowen, 837 F.2d 272, 275 (6th Cir.1987).
 
 
 13
 Although the testimony of the vocational expert, Dr. Elton, was somewhat disjointed and vague, Dr. Elton did testify that 9,000 light assembly jobs existed in the Louisville area, about 2,000 of which Waldridge could perform in light of his disabilities. And, he identified about 1,600 jobs specifically that he knew of in Waldridge's region that Waldridge could perform. This is substantial evidence from which an ALJ could determine that there is a significant number of jobs in Waldridge's region.
 
 
 14
 For these reasons, we AFFIRM the Secretary's denial of disability benefits.