74 F.3d 1240
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles ALLEN, Plaintiff-Appellant,
v.
COMMISSIONER OF SOCIAL SECURITY, Defendant-Appellee.
 No. 94-4188.
 United States Court of Appeals, Sixth Circuit.
 Jan. 16, 1996.
 
 Before: SILER and MOORE, Circuit Judges; FORESTER, District Judge.*
 SILER, Circuit Judge.
 
 
 1
 Charles Allen, Plaintiff, appeals the denial of disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner (formerly the Secretary of Health and Human Services). The district court affirmed the Commissioner's determination that Allen is not eligible for disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. Secs. 423 and 1383. Allen makes two contentions: 1) the Administrative Law Judge ("ALJ") improperly required him to produce objective medical evidence of his level of pain; and 2) the ALJ erroneously concluded that a significant number of jobs were available to him. For the reasons stated herein, we affirm the decision of the district court.
 
 I.
 
 2
 Allen was born on June 3, 1947, and has an eleventh grade education. His last job as a loading dock worker ended when boxes fell and hit him in the neck and head area in 1983. He received temporary worker's compensation for this injury. His work experience includes jobs as janitor, assembler, and dish washer. Allen alleges a variety of ailments including headaches, cervical strain, lumbosacral strain, mild depression, somatoform disorder, substance addiction in remission, and chronic pain syndrome. Six medical providers reviewed Allen's mental and physical ailments: 1) Dr. Gillis, his treating physician; 2) Dr. Louis; 3) Dr. Feuss; 4) Jewish Hospital Pain Center ("Pain Center"); 5) Dr. Lester; and 6) Dr. Randolph.
 
 
 3
 Allen applied for DIB and SSI benefits on September 12, 1989, and January 29, 1990, respectively. After a hearing, the ALJ concluded Allen was not disabled because he could perform a significant number of sedentary jobs. The Appeals Council denied review. Allen filed for review in the district court which affirmed the Commissioner's decision.
 
 II.
 
 4
 This court has a limited scope of review: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. Sec. 405(g); see Wyatt v. Secretary of Health & Human Servs., 974 F.2d 680, 683 (6th Cir.1992) (citing Kinsella v. Schweiker, 708 F.2d 1058 (6th Cir.1983) (per curiam)). This court must also decide whether the Commissioner used the appropriate legal criteria in reaching a conclusion. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). Thus, this court is bound to accept the ALJ's findings "... if those findings are supported by substantial evidence[1] on the record as a whole." Arkansas v. Oklahoma, 503 U.S. 91, 113 (1992) (citation omitted). The ALJ's findings should not be replaced by merely choosing alternative findings that could be supported by substantial evidence. Id.
 
 III.
 
 5
 To be entitled to disability insurance benefits as well as supplemental security income, Allen must meet two requirements. He must first prove an impairment as defined in the statute and must then show an inability to perform any substantial gainful activity as a result of his impairment. Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449 (6th Cir.1990) (citing 42 U.S.C. Sec. 423(d)(1)(A)). The ALJ conducted a five-step evaluation of Allen's claim as required by the regulations: 1) if claimant is performing substantial gainful work activity, benefits are automatically denied; 2) claimant must have a severe impairment; 3) if the impairment meets a listed impairment found in the regulations, then claimant is disabled and, thus, entitled to disability benefits without further inquiry; 4) if claimant is found "not disabled," then the Commissioner must decide if claimant can perform his past relevant work; 5) if claimant cannot perform his past relevant work, the burden of proof shifts to the Commissioner to prove there is a significant number of jobs capable of being performed by claimant based upon his vocational factors. 20 C.F.R. Sec. 404.1520.
 
 
 6
 There is no dispute as to the first two steps of the analysis. As for the third step, the ALJ determined that Allen's impairments, specifically his level of pain, do not meet the severity required to achieve "disability" status. Allen's first point of error alleges the ALJ erroneously concluded he was not disabled because the ALJ required objective medical evidence of the severity of his pain. He argues Jones v. Secretary of Health & Human Servs., 945 F.2d 1365 (6th Cir.1991), and Felisky v. Bowen, 35 F.3d 1027 (6th Cir.1994), suggest that other evidence may be considered to decide if pain is disabling. Other evidence may be considered along with objective medical evidence, but a finding of disability requires more than mere subjective complaints. Disability is to be determined after consideration of "the extent to which [a claimant's] symptoms can reasonably be accepted as consistent with objective medical evidence." 20 C.F.R. Sec. 404.1529(a); see also Casey v. Secretary of Health & Human Servs., 987 F.2d 1230 (6th Cir.1993) (subjective claims of disabling pain must be supported by objective medical evidence in order to serve as the basis of a finding of disability); 42 U.S.C. Sec. 423(d)(5)(A); and C.F.R. Sec. 404.1528(a). As the ALJ noted at the hearing, "there is no objective evidence to support the level of pain that he [Allen] contends he has."
 
 
 7
 In Stanley v. Secretary of Health & Human Servs., 39 F.3d 115 (6th Cir.1994), the court explained this standard:
 
 
 8
 In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so then, 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 9
 Id. at 117 (citing Jones v. Secretary of Health & Human Servs., 945 F.2d 1365, 1369 (6th Cir.1991), and quoting Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986)). Allen alleges that the existence of chronic pain syndrome, alone, is sufficient to establish the presence of disabling pain. However, there is a dearth of objective medical evidence confirming the severity of the alleged pain. With regard to the second test in Stanley, there is no palpable evidence that the chronic pain syndrome is objectively established.
 
 
 10
 The medical evidence of record supports our decision to affirm. First, Dr. Gillis' opinion is afforded great weight because of his lengthy treatment relationship with Allen since July 1983. 20 C.F.R. Sec. 416.927(d)(1) & (2); Cohen v. Secretary of Health & Human Servs., 964 F.2d 524, 528 (6th Cir.1992) (citation omitted). However, the records provided by Dr. Gillis are contradictory. In a report dated February 26, 1991, Dr. Gillis concluded Allen was unable to work due to his physical limitations in sitting, standing, walking, lifting, and bending. Gillis' underlying diagnoses of cerebral concussion, post-traumatic and stress headaches, spondylosis (cervical spine arthritis), and chronic pain syndrome were merely conclusions without substantiating, objective medical evidence. Dr. Gillis summarily determined that Allen had been disabled since 1983, but no proof can be found for the period between 1983 and 1989.
 
 
 11
 In contrast, a June 27, 1991, physical examination of Allen by Dr. Gillis revealed no problems with sitting or standing, walking on toes or heels, or reaching over his head. This report also noted no abnormal reflexes, no atrophy in Allen's extremities,[2] some muscle spasms in the cervical spine, and decreased range of motion in the neck. Muscle strength testing displayed a four plus rating out of five for Allen's upper extremities. Dr. Gillis noted psychological overlay and dependency on medication. Despite these findings, Dr. Gillis again concluded that Allen was disabled.
 
 
 12
 Allen was also examined by Dr. Louis for his headaches on June 2, 1989. Dr. Louis noted that no EEG or CT scans or any other brain studies were performed on Allen. Allen's neurological, cranial nerve, and motor examinations were all normal. The motor examination showed a five out of five rating in the major muscle groups. Allen was originally taking Tylenol IV and Valium for his neck and back injury. Dr. Louis diagnosed post-traumatic and tension headaches, and he also prescribed Motrin. See Blacha v. Secretary of Health & Human Servs., 927 F.2d 228, 231 (6th Cir.1990) (claimant's use of only mild medications undercuts complaints of disabling pain) (citation omitted). Another report on April 24, 1990, revealed a negative neurological exam for nerve injury and a normal EMG study of Allen's left lower extremity. Dr. Louis concluded: "These findings do not support a diagnosis of lumbar radiculopathy [nerve root injury]...."
 
 
 13
 Dr. Feuss performed a psychological evaluation of Allen on November 12, 1990. Although he diagnosed alcohol abuse and somatoform pain disorder, Dr. Feuss noted that there were no neurological abnormalities. In fact, the evidence in Feuss' report tends to show that Allen did not experience marked restrictions in daily activities nor in social functioning as he was able to clean his home, shop, watch television, play cards with friends, and drive an automobile. See Blacha, 927 F.2d at 231 ("As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain."). Dr. Feuss determined Allen's attention, concentration, and cognitive skills to be fair. The results of the MMPI personality test were deemed highly questionable by Dr. Feuss because of potential malingering or reading comprehension difficulties. Allen received marks of "fair" to "good" regarding his mental ability to make adjustments in the areas of occupational, performance, and social adjustments. Feuss concluded:
 
 
 14
 Given his estimated intelligence within the low average range, it is expected that [Allen] would be able to understand and follow simple verbal instructions. [He] should be capable of performing simple and repetitive tasks, provided the demands do not involve significant physical exertion.
 
 
 15
 The Pain Center's July 17, 1990, diagnosis of chronic pain syndrome included low-back and neck pain. However, the report noted that an EMG and examination were negative for the presence of radiculopathy. No objective medical evidence or studies were found in this evaluation.
 
 
 16
 Two medical advisors testified at the hearing before the ALJ. From a physical standpoint, Dr. Randolph concluded that there was no objective medical evidence supporting Allen's subjective complaints of pain.[3] Dr. Lester described the nature of chronic pain syndrome but conspicuously lacked any reference to objective medical support of the syndrome in Allen. See id. at 230 (citation omitted) (without supporting objective medical evidence such as X-rays, EMGs, and similar tests, the court should defer to the ALJ's decision).
 
 
 17
 Finding Allen not to be credible when testifying to the extent of his impairments and level of pain, the ALJ gave less weight to his testimony. There being substantial evidence buttressing the ALJ, this court will not try the case de novo nor decide questions of credibility. Garner, 745 F.2d at 387 (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir.1972)). The ALJ applied the appropriate legal standard by requiring objective medical evidence of the severity of Allen's subjective complaints of pain.
 
 IV.
 
 18
 Because Allen cannot perform his past work, the burden shifted to the Commissioner to prove the existence of a significant number of other jobs in the national economy available to him. The statute, 42 U.S.C. Sec. 423(d)(2), explicitly defines the Commissioner's burden:
 
 
 19
 (A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.
 
 
 20
 Based upon the June 27, 1991, report of Dr. Gillis, the ALJ determined that Allen could sit for two hours, stand or walk for six hours, and intermittently lift ten pounds during one working day. After carefully considering Allen's work capacity, age, education, and prior experience, the vocational expert ("VE") opined Allen could work 2800 semi-skilled, sedentary jobs such as a dispatcher, an order clerk, and a routing clerk.[4] Of these 2800 jobs, the VE testified that all required only an eighth grade education. The VE also testified that Allen could work unskilled, sedentary jobs such as an order caller. The VE identified 95 order caller jobs in Allen's labor market. The ALJ considered the total of 2895 semi-skilled and unskilled jobs to be a significant number. There is no magic number which constitutes a "significant number." Hall v. Bowen, 837 F.2d 272, 275 (6th Cir.1988). However, there are factors which should be considered such as: 1) the level of the claimant's disability; 2) the reliability of the VE; 3) the reliability of the claimant's testimony; and 4) the isolated nature of the jobs. Id. The ALJ's consideration of such factors was sufficient.
 
 
 21
 Allen argues that because he had no transferable skills, he can do nothing but unskilled work. As the magistrate judge noted, the issue of transferable skills is irrelevant according to 20 C.F.R. Sec. 404, Subpart P, Appendix 2, Rule 201.25. Under the grid-table[5] in the regulations, a younger individual (age 18-50)[6] with a limited education (7th through the 11th grade)[7] and previous, non-transferable work skills could appropriately be found not disabled. Id. As Allen was a younger individual at the time of the ALJ's decision, the issue of transferable skills is immaterial. Therefore, the 2800 semi-skilled jobs were a significant number suitable to Allen's capabilities.[8]
 
 V.
 
 22
 As substantial evidence supports the Commissioner's findings, the decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 The Supreme Court has defined substantial evidence as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 42 U.S. 389, 401 (1971)
 
 
 [2]
 See Blacha v. Secretary of Health & Human Servs., 927 F.2d 228, 231 (6th Cir.1990) (evidence of muscle atrophy is typically associated with disabling pain) (citation omitted)
 
 
 [3]
 Randolph specifically discounted Dr. Gillis' findings of spondylosis (cervical arthritis) because of a lack of objective test results
 
 
 [4]
 The VE referenced these jobs from the Dictionary of Occupational Titles
 
 
 [5]
 Allen also contends that the ALJ erred by using the statutory "grid" because he suffered from non-exertional mental impairments. The grid is primarily for exertional impairments. Even though Allen's characteristics do not match the medical-vocational "grid," the ALJ may still use the grid as a guide or framework in making the disability determination. Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir.1990)
 
 
 [6]
 Allen was forty-four when he applied for benefits
 
 
 [7]
 20 C.F.R. Sec. 404.1564(b)(3)
 
 
 [8]
 Allen's argument must also fail because he assumes the jobs must be located in his geographical area. See 42 U.S.C. Sec. 423(d)(2)